UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Sonji Washington Wiley,<br><br>Plaintiff,<br><br>v.<br><br>Portfolio Recovery Associates, LLC,<br><br>Defendant. | Case No. 20-cv-00737 (SRN/KMM)<br><br><br>**ORDER** |

Darren B. Schwiebert, DBS Law LLC, 301 Fourth Avenue South, Suite 280N, Minneapolis, MN 55415, for Plaintiff.

Benjamin Kinney, Gordon Rees Scully Mansukhani, LLP, One North Franklin, Suite 800, Chicago, IL 60606, and Suzanne L. Jones, Gordon Rees Scully Mansukhani, LLP, 100 South Fifth Street, Suite 1900, Minneapolis, MN 55402, for Defendant.

SUSAN RICHARD NELSON, United States District Judge

This matter is before the Court on the Motion to Dismiss or, in the Alternative, Stay Proceedings [Doc. No. 12] filed by Defendant Portfolio Recovery Associates, LLC. Based on a review of the files, submissions, and proceedings herein, and for the reasons below, the Court **DENIES** Defendant's motion.

**I.    BACKGROUND**

Portfolio Recovery Associates, LLC ("PRA"), whose principal business is the collection of debts owed to others, sued Sonji Washington Wiley in the Hennepin County District Court to collect a debt allegedly owed on Wiley's "Comenity Bank- Catherines" credit card. (Am. Compl. [Doc. No. 7] ¶¶ 6, 16, 18, 22.) While the state court lawsuit was

1

pending, Wiley brought this action against PRA alleging several violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 et seq. According to Wiley's federal complaint, Wiley did not receive any written communications from PRA prior to being served with the state court summons and complaint; Wiley did not open a credit card with "Comenity Bank- Catherines," an entity that Wiley alleges does not exist; Wiley does not owe the balance on that card; and PRA never received an assignment of the credit card debt. (Am. Compl. ¶¶ 19, 21-24.)

Moreover, Wiley alleges that PRA's conduct in attempting to collect the Comenity Bank debt violated restrictions placed on PRA following enforcement actions by federal and state government entities. Specifically, in 2015, PRA and the United States Consumer Financial Protection Bureau ("CFPB") entered a consent order requiring PRA to obtain certain documentation and provide certain information to debtors prior to bringing enforcement actions. (*Id.* ¶¶ 29-37.) And in 2019, PRA entered an "Assurance of Discontinuance" with the Massachusetts Attorney General, which contained similar restrictions as the CFPB consent order. (*Id.* ¶¶ 39-40.) Wiley alleges that PRA's conduct in the state court collection action violates these restrictions, and therefore violates the FDCPA.

Finally, Wiley alleges that Minnesota law requires PRA to obtain a license prior to collecting consumer debts in Minnesota, and that PRA does not have such a license. (*Id.* ¶¶ 41-48.) She also alleges that PRA's summons directed her to serve her answer at a North Dakota Post Office Box, contrary to Minnesota's rules for service of process. (*Id.* ¶¶ 26-27.)

In total, Wiley alleges six separate violations of the FDCPA:

1. PRA violated 15 U.S.C. § 1692f(1) by filing the complaint without a valid assignment.
2. In violation of § 1692e(2), (5), and (10), PRA made false statements regarding the amount or legal status of the debt, including by falsely stating that Wiley owed $931.09 on a "Comenity Bank- Catherines" credit card account.
3. PRA violated § 1692f(1) by falsely stating that Wiley must serve her answer at a North Dakota Post Office Box, contrary to Minnesota Rule of Civil Procedure 4.01.
4. PRA's conduct in bringing the lawsuit violated the CFPB consent order, and therefore violated § 1692f(1).
5. PRA's conduct similarly violated the Assurance of Discontinuance, and therefore violated § 1692f(1).
6. By engaging in collection activity without a license to collect debt in Minnesota, PRA violated § 1692f(1).

(*Id.* ¶¶ 49-51, 53-55.)

After Wiley filed her federal complaint, PRA filed a motion to dismiss or stay Wiley's FDCPA claims. (Def.'s Rule 12(b)(6) Mot. Dismiss or Stay Proceedings [Doc. No. 12].) Meanwhile, Wiley filed a motion for summary judgment in the state court action, based on PRA's alleged violation of the CFPB consent order. In denying Wiley's motion, the state court concluded that it did not have jurisdiction to enforce the consent order; that even if it did, Wiley did not have standing to enforce the consent order; and that PRA "fully complied with" the consent order. (Def.'s Reply Mem. [Doc. No. 16], Ex. A, at 5.) The state court litigation is proceeding toward trial.

PRA moves to dismiss, arguing that Wiley's FDCPA claims hinge on Wiley's future success in the state court collection action, and are therefore unripe. In the alternative, PRA requests that the Court stay this litigation until the collection action concludes.

3

## II.  DISCUSSION

### A.  Standard of Review

Although styled as a Federal Rule of Civil Procedure 12(b)(6) motion, PRA's motion—which argues that Wiley's complaint is unripe—is at heart a Rule 12(b)(1) motion. *See Chandler v. State Farm Mut. Auto. Ins. Co.*, 598 F.3d 1115, 1122 (9th Cir. 2010) ("Because standing and ripeness pertain to federal courts' subject matter jurisdiction, they are properly raised in a Rule 12(b)(1) motion to dismiss."). Where the defendant argues that the facts alleged in the complaint fail to establish subject-matter jurisdiction—as PRA does here—the plaintiff is afforded similar safeguards as in a Rule 12(b)(6) motion. *Osborn v. United States*, 918 F.2d 724, 729 n.6 (8th Cir. 1990). Namely, the court must "accept as true all factual allegations in the complaint, giving no effect to conclusory allegations of law," and determine whether the plaintiff's alleged facts "affirmatively and plausibly suggest" that jurisdiction exists. *Stalley v. Catholic Health Initiatives*, 509 F.3d 517, 521 (8th Cir. 2007). The court's review is limited to the face of the pleadings. *Branson Label, Inc. v. City of Branson*, 793 F.3d 910, 914 (8th Cir. 2015).

### B.  PRA's Motion to Dismiss

PRA argues that Wiley's FDCPA claims should be dismissed because they are unripe. Whether a claim is ripe depends on "the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." *Pub. Water Supply Dist. No. 10 of Cass Cty. v. City of Peculiar*, 345 F.3d 570, 572–73 (8th Cir. 2003) (quoting *Abbott Labs. v. Gardner*, 387 U.S. 136, 149 (1967)). A plaintiff must satisfy both elements "at least to a minimal degree." *Id.* (citing *Nebraska Pub. Power Dist. v. MidAmerican*

4

*Energy Co.*, 234 F.3d 1032, 1039 (8th Cir. 2000)). Under the "fitness for judicial decision" prong of the analysis, whether a case is fit "depends on whether it would benefit from further factual development." *Id.* at 573. A case "is more likely to be ripe if it poses a purely legal question and is not contingent on future possibilities." *Id.* Under the hardship prong, the complaint must allege that the plaintiff "has sustained or is immediately in danger of sustaining some direct injury as the result of the challenged" conduct. *Id.* (quoting *O'Shea v. Littleton*, 414 U.S. 488, 494 (1974)).

Here, PRA argues that Wiley's FDCPA claims are unfit for judicial decision because they mirror the defenses Wiley raised in the state court collection action, and the merits of Wiley's FDCPA claims therefore hinge on the future resolution of the state court case. For example, Wiley's first claim alleges that PRA violated the FDCPA by filing a complaint without obtaining a valid assignment of Wiley's alleged debt. (Am. Compl. ¶ 49.) This claim, PRA argues, depends on a future state court ruling finding no valid assignment. And PRA argues that "there is no hardship to the parties from withholding court consideration" because "the instant matter is not yet ripe." (Def.'s Mem. Supp. [Doc. No. 13], at 3.)

PRA's ripeness argument is unpersuasive. For each of Wiley's six claimed FDCPA violations, the conduct allegedly violating the FDCPA is not a speculative, future possibility; it has already occurred. Taking claim one as a representative example again, PRA has already filed its complaint (allegedly) without a valid assignment. Although the state court's ruling in the collection action could affect the merits of Wiley's FDCPA claims under preclusion principles, Wiley's claims do not *depend* on the resolution of the

5

state court case. That is, Wiley does not need to obtain a state court ruling that PRA lacked a valid assignment prior to pursuing her first FDCPA claim. The same reasoning applies to the rest of Wiley's six claims. While the merits of Wiley's FDCPA claims overlap with some of Wiley's defenses in the state court litigation (e.g., the validity of PRA's assignment), that overlap does not render Wiley's FDCPA claims unfit for judicial decision.

Wiley satisfies the hardship prong as well. The hardship prong requires a plaintiff to allege that she has suffered harm, or imminently will suffer harm, as a result of the defendant's conduct. *See Pub. Water Supply Dist. No. 10 of Cass Cty.*, 345 F.3d at 573. Because Wiley alleges that PRA's conduct in the state court collection action has already violated her federally protected rights, Wiley satisfies the hardship prong. PRA's argument to the contrary—that delaying resolution of Wiley's FDCPA claims would cause no hardship because those claims are unripe—begs the question.

In short, while the overlap between Wiley's state court defenses and federal FDCPA claims is relevant to whether the Court should stay this case, that overlap does not render Wiley's FDCPA claims unripe. Accordingly, the Court denies PRA's motion to dismiss.

### C. PRA's Alternative Request to Stay

PRA requests in the alternative that the Court stay this case until the state court collection action has concluded. PRA argues that the Court should stay this case as an exercise of its inherent, discretionary power to manage its docket. In its reply memorandum, PRA raised the additional argument that this Court must abstain under the

*Colorado River* abstention doctrine or collateral estoppel. The Court addresses each argument in turn.

### 1.     The Court's Inherent Power to Stay

The Court declines to stay this litigation as an exercise of its inherent power to manage its docket. "[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Cottrell v. Duke*, 737 F.3d 1238, 1248 (8th Cir. 2013) (quoting *Landis v. N. Am. Co.*, 299 U.S. 248 (1936)). But considerations of fairness to the opposing party mandate a presumption in favor of denying a motion to stay. *Rumble v. Fairview Health Servs.*, No. 14–cv–2037 (SRN/FLN), 2017 WL 401940, at *2 (D. Minn. Jan. 30, 2017). The party seeking a stay has the burden of overcoming this presumption, and to do so must demonstrate a "specific hardship or inequity if he or she is required to go forward." *Daywitt v. State of Minnesota*, No. 14-CV-4526 (WMW/LIB), 2016 WL 3004626, at *5 (D. Minn. May 24, 2016) (quoting *Jones v. Clinton*, 72 F.3d 1354, 1364 (8th Cir. 1996) (Beam, J., concurring)).

PRA has not overcome the presumption against issuing a stay. PRA argues that a stay is appropriate because this case and the state court collection action involve similar issues (e.g., the validity of PRA's assignment). Thus, PRA highlights concerns of judicial efficiency, the risk of inconsistent rulings, and the costs of concurrent litigation. To be sure, the outcome of the state court action might affect Wiley's FDCPA claims. For example, to the extent the state court finds PRA's assignment valid, issue preclusion may well bar Wiley from arguing that PRA violated the FDCPA by filing a complaint without a valid

assignment. Nonetheless, the factual and legal overlap between the cases—and the concerns of judicial economy and cost PRA invokes—do not rise to the level of hardship or inequity required to overcome the presumption against a stay. In fact, the Supreme Court, recognizing the "virtually unflagging obligation of the federal courts to exercise the jurisdiction given them," has observed that "[g]enerally, as between state and federal courts, the rule is that 'the pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction . . . .'" *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976) (quoting *McClellan v. Carland*, 217 U.S. 268, 282 (1910)). Thus, the fact that there is pending litigation concerning overlapping issues in state court, by itself, is insufficient to overcome the presumption against a stay.

### 2. *Colorado River* Abstention

Nor does the *Colorado River* abstention doctrine counsel a stay. At the outset, the Court notes that PRA did not invoke *Colorado River* in its initial memorandum. Instead, PRA raised the *Colorado River* argument in its reply memorandum, contrary to this Court's rules. Local Rule 7.1(c)(3)(B) ("A reply memorandum must not raise new grounds for relief or present matters that do not relate to the opposing party's response."). Local Rule 7.1(c)(3)(B) serves an important purpose: Because PRA did not raise this argument in its initial memorandum, Wiley has not had the opportunity to respond to PRA's analysis of the issue and the Court is without the benefit of that response.

Nonetheless, the Court will address PRA's *Colorado River* argument because, ultimately, the doctrine does not apply here. *Colorado River* permits a federal court to

8

"decline to exercise jurisdiction over cases where 'parallel' state court litigation is pending." *Spectra Commc'ns Grp., LLC v. City of Cameron*, 806 F.3d 1113, 1121 (8th Cir. 2015). A district court may stay a case pursuant to *Colorado River* "only 'when [1] parallel state and federal actions exist and [2] exceptional circumstances warrant abstention.'" *Cottrell*, 737 F.3d at 1244–45 (alterations in original) (quoting *Fru-Con Constr. Corp. v. Controlled Air, Inc.*, 574 F.3d 527, 534 (8th Cir. 2009)). In applying *Colorado River*, federal courts must be mindful of their "'virtually unflagging obligation . . . to exercise the jurisdiction given them,' which 'does not evaporate simply because there is a pending state court action involving the same subject matter.'" *Spectra Commc'ns Grp., LLC*, 806 F.3d at 1121 (internal citation omitted) (first quoting *Colorado River*, 424 U.S. at 817; then quoting *Federated Rural Elec. Ins. Corp. v. Ark. Elec. Coops., Inc.*, 48 F.3d 294, 297 (8th Cir. 1995)). Consistent with that obligation, "abstention is appropriate only in 'exceptional circumstances' where the surrender of federal jurisdiction is supported by 'the clearest of justifications.'" *Id.* at 1121 (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 25–26 (1983)).

Under the first prong of the *Colorado River* analysis, concurrent state and federal actions are "parallel" if "a substantial similarity . . . exist[s] between the state and federal proceedings, which . . . occurs when there is a substantial likelihood that the state proceeding will fully dispose of the claims presented in the federal court." *Cottrell*, 737 F.3d at 1245 (quoting *Fru-Con Constr. Corp.*, 574 F.3d at 534). If there is any doubt regarding whether state and federal actions are parallel, the court cannot refuse jurisdiction. *Id.* Under *Colorado River's* second prong, courts examine six factors to determine whether

9

exceptional circumstances exist.[1] These factors are not a "mechanical checklist," and should instead be weighed "in a pragmatic, flexible manner with a view to the realities of the case at hand." *Spectra Commc'ns Grp., LLC*, 806 F.3d at 1121 (quoting *Moses H. Cone*, 460 U.S. at 16).

*Colorado River* does not apply here because the state and federal lawsuits are not "parallel." Although Wiley's defenses in the state court collection action overlap with her federal FDCPA claims, there is not a "substantial likelihood that the state proceeding will fully dispose of the claims presented in the federal court." *Cottrell*, 737 F.3d at 1245; *cf. Acosta v. James A. Gustino, P.A.*, 478 F. App'x 620 (11th Cir. 2012). In *Acosta*, the Eleventh Circuit held that the district court abused its discretion in applying *Colorado River* because a debtor's FDCPA claims were not "parallel" to a state court collection action. There, the debtor owed homeowners' association fees, and the association sued in state court to either foreclose a lien on the debtor's property or to recover a money judgment. *Id.* at 620. The debtor then sued the association's law firm in federal court, alleging

---

[1] The six factors are:

(1) whether there is a res over which one court has established jurisdiction, (2) the inconvenience of the federal forum, (3) whether maintaining separate actions may result in piecemeal litigation, unless the relevant law would require piecemeal litigation and the federal court issue is easily severed, (4) which case has priority—not necessarily which case was filed first but a greater emphasis on the relative progress made in the cases, (5) whether state or federal law controls, especially favoring the exercise of jurisdiction where federal law controls, and (6) the adequacy of the state forum to protect the federal plaintiff's rights.

*Spectra Commc'ns Grp., LLC*, 806 F.3d at 1121 (quoting *Federated Rural*, 48 F.3d at 297).

10

violations of the FDCPA. *Id.* The Eleventh Circuit reasoned that the actions were not parallel because resolution of the state action against the debtor would not necessarily eliminate the debtor's FDCPA claims; rather, "the key to the federal case is not only whether the debt was enforceable but also whether the [law firm's] conduct when collecting that debt complied with the Fair Debt Collection Practices Act." *Id.* at 622.

Similarly, the key to Wiley's FDCPA claims is not just whether the debt is enforceable, but whether PRA violated the FDCPA in its pursuit of that debt. The Court doubts whether resolution of the state court litigation will "fully dispose of" Wiley's FDCPA claims. *Cottrell*, 737 F.3d at 1245. For example, Wiley's third FDCPA claim alleges that PRA violated § 1692f(1) by falsely stating that Wiley must serve her answer at a North Dakota Post Office Box, contrary to Minnesota Rule of Civil Procedure 4.01. This allegation, if true, may not bear on the enforceability of Wiley's debt, and therefore may not be resolved by the state court. Yet the allegation is relevant to whether PRA violated the FDCPA. If there is any doubt regarding whether state and federal actions are parallel, the Court cannot refuse jurisdiction. *Id.* Because there is not a substantial likelihood that the state court collection action will fully dispose of Wiley's FDCPA claims, *Colorado River* does not apply.

### 3. Collateral Estoppel

Finally, PRA passingly refers to collateral estoppel as a justification for a stay— again in its reply memorandum. (Def.'s Reply Mem. 4.) But the doctrine of collateral estoppel applies only after a final judgment on the merits. *See Hauschildt v. Beckingham*, 686 N.W.2d 829, 837 (Minn. 2004). Although the state court's order denying Wiley's

motion for summary judgment may have addressed one of the issues relevant to Wiley's six FDCPA claims,[2] the state court has not produced a final judgment on all of the issues relevant to Wiley's FDCPA claims. Accordingly, collateral estoppel does not bar Wiley's claims at this stage.

For the foregoing reasons, the Court denies PRA's request to stay these proceedings.

### III.  CONCLUSION

Based on the submissions and the entire file and proceedings herein, **IT IS HEREBY ORDERED** that Defendant's Motion to Dismiss or, in the Alternative, Stay Proceedings [Doc. No. 12] is **DENIED**.

**IT IS SO ORDERED.**


Dated: October 19, 2020                                s/Susan Richard Nelson
                                                       SUSAN RICHARD NELSON
                                                       United States District Judge

---

[2] The Court takes no position, at this stage, on whether the state court's summary judgment order forecloses Wiley's fourth FDCPA claim. Although PRA requested, in its reply memorandum, that the Court dismiss Wiley's fourth claim, "[a] reply memorandum must not raise new grounds for relief." Local Rule 7.1(c)(3)(B). PRA's motion to dismiss was premised on ripeness. The preclusive effect of the state court's order was not discussed in PRA's initial memorandum or in Wiley's opposition memorandum, and has no bearing on whether Wiley's FDCPA claims are ripe.