## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| Sonji Washington Wiley,<br><br>   Plaintiff,<br><br>v.<br><br>Portfolio Recovery Associates, LLC,<br><br>   Defendant. | Case No. 20-cv-00737 (SRN/DTS)<br><br><br>**ORDER** |
| Melissa Becker,<br><br>   Plaintiff,<br><br>v.<br><br>Portfolio Recovery Associates, LLC,<br><br>   Defendant. | Case No. 20-cv-00791 (SRN/DTS) |
| Felicia Yang,<br><br>   Plaintiff,<br><br>v.<br><br>Portfolio Recovery Associates, LLC,<br><br>   Defendant. | Case No. 20-cv-01397 (SRN/DTS) |
| Dominique Mayfield,<br><br>   Plaintiff,<br><br>v.<br><br>Portfolio Recovery Associates, LLC,<br><br>   Defendant. | Case No. 21-cv-00001 (SRN/DTS) |

Darren B. Schwiebert, DBS Law LLC, 301 Fourth Avenue South, Suite 280N, Minneapolis, MN 55415, for Plaintiffs.

Avanti Bakane and Benjamin Kinney, Gordon Rees Scully Mansukhani, LLP, 1 North Franklin, Suite 800, Chicago, IL 60606; and Susanne L. Jones, Gordon Rees Scully Mansukhani, LLP, 100 South Fifth Street, Suite 1900, Minneapolis, MN 55402, for Defendant.

SUSAN RICHARD NELSON, United States District Judge

This matter is before the Court on two motions filed in four related cases. Plaintiffs Sonji Washington Wiley, Melissa Becker, Felicia Yang, and Dominque Mayfield (collectively, "Plaintiffs") each move for summary judgment on damages and for attorney's fees [20-cv-00737, Doc. No. 65; 20-cv-00791, Doc. No. 90; 20-cv-01397, Doc. No. 47; 21-cv-00001, Doc. No. 51]. Based on a review of the files, submissions, and proceedings herein, and for the reasons below, the Court **GRANTS** Plaintiffs' Motions for Partial Summary Judgment on Damages and **GRANTS IN PART** and **DENIES IN PART** their respective requests for Attorney's Fees and Costs.

## I.    BACKGROUND

The Court incorporates by reference the background information provided in its March 1, 2021 Order in the *Wiley*, *Becker*, and *Yang* actions, and the nearly identical August 9, 2021 Order in the *Mayfield* action. (*See, e.g.*, *Wiley*, 20-cv-737 (Mar. 1, 2021 Order [Doc. No. 52]; *Mayfield*, 21-cv-00001 (Aug. 9, 2021 Order [Doc. No. 47].) [1]

---

[1]    Where the same document, or essentially identical document, has been filed in the *Wiley*, *Becker*, *Yang*, and *Mayfield* actions, the Court will cite only to the 20-cv-00737 docket in *Wiley*, the first-filed case, as a matter of convenience.

At various points in 2020, Wiley, Becker, Yang, and Mayfield filed individual lawsuits against Defendant Portfolio Recovery Associates, LLC ("PRA"), under the Fair Debt Collections Practices Act, ("FDCPA"), 15 U.S.C. § 1692 *et seq*. All of the cases arise from PRA's debt collection efforts and related Minnesota state court litigation, in which PRA sued Plaintiffs individually to collect debts that Plaintiffs allegedly owed on several store credit cards. (Mar. 1, 2021 Order at 2–3.)

In each state court case, Plaintiffs challenged the propriety of the summons used by PRA to initiate the actions against them. (*Id*. at 3–4.) They argued that the summons was defective under Minnesota Rule of Civil Procedure 4.01, which, at all times relevant to the proceedings at issue, provided that a "summons shall . . . give an address *within the state* where the subscriber may be served in person and by mail."[2] (*Id*.) PRA's summons, however, directed Plaintiffs to respond to a person in North Dakota. (*Id*. at 2–3.) The summons also contained the threat to pursue default judgments against Plaintiffs if they failed to serve their Answer to the North Dakota address. (*Id*.) In the state court actions, each of the state courts found that the summons did not comply with Rule 4.01. (*Id*. at 3–4.)

---

[2]     In 2021, the Minnesota Legislature amended Rule 4.01, removing the requirement that the plaintiff provide a Minnesota address for mail and personal service. Minn. R. Civ. P. 4.01 (2021). The Advisory Committee comments state that the prior requirements "suited the needs of a different time, and that no compelling reason exists to require a Minnesota address to commence litigation." *Id*., Adv. Cmte. Comments, 2021 Amendments.

Plaintiffs then commenced these federal lawsuits, alleging that because the summons violated Rule 4.01, PRA violated several provisions of the FDCPA, including 15 U.S.C. § 1692e(2), (5), (10), and 1692f(1), which generally prohibit debt collectors from using false, deceptive, or misleading representations or unfair means to collect debts. (*Id.* at 4.) The parties engaged in dispositive motion practice, with PRA ultimately moving for judgment on the pleadings, asserting that Plaintiffs had not plausibly alleged standing and that the summons did not violate the FDCPA as a matter of law. Plaintiffs moved for partial summary judgment, arguing there was no disputed issue of material fact as to PRA's liability under the FDCPA based on its defective summons and threat of default judgment based on the faulty summons. (*Id.*) The Court rejected Defendant's arguments and ruled in Plaintiffs' favor, finding that PRA's threat to obtain a default judgment based on its defective summons constituted a "threat to take an[] action that cannot legally be taken" under § 1692(e)(5). (*Id.* at 8–12.) Accordingly, the Court denied PRA's motion and granted Plaintiffs' motions. (*Id.* at 8, 12.)

The Court then permitted discovery on the issue of actual damages, and to the extent the parties were unable to resolve any disagreements on the issue, directed them to submit the matter to the Court. (*Wiley*, May 14, 2021 Order [Doc. No. 60].) Because the parties were unable to reach a consensus, now, Plaintiffs each move for summary judgment on actual and statutory damages, and request costs and attorney's fees. PRA opposes the motions. The parties presented oral argument on these issues before the undersigned judge on November 10, 2021.

## II.    DISCUSSION

### A.    Plaintiffs' Requested Relief

The FDCPA provides that a prevailing individual plaintiff is entitled to three types of relief:  (1) actual damages; (2) statutory damages not to exceed $1,000; and (3) the costs of the action, together with a reasonable attorney's fee as determined by the court.  15 U.S.C. §§ 1692k(a)(1)-(3).

Plaintiffs here seek all three forms of relief.  First, as a form of actual damages, Wiley, Becker, and Yang seek the recovery of the attorney's fees and costs incurred in the state court litigation.[3]  Specifically, these three Plaintiffs request the following amounts in actual damages:

|  |  |
|---|---|
| Wiley | $22,120 |
| Becker | $43,320 |
| Yang | $13,960 |

(*Wiley*, Schwiebert Decl. [Doc. No. 69] ¶ 15, Ex. E (Wiley State Ct. Billing Stmt.); *Becker*, Schwiebert Decl. [Doc. No. 94] ¶ 15, Ex. G (Becker State Ct. Billing Stmt.); *Yang*, Schwiebert Decl. [Doc. No. 51] ¶ 15, Ex. I (Yang State Ct. Billing Stmt.)

Second, each of the Plaintiffs request statutory damages in the maximum amount of $1,000.  (Pls.' Mem. [Doc. No. 68] at 8–11, 23–24.)

---

[3]    Plaintiff Mayfield does not seek actual damages from PRA.  (Pls.' Mem. [Doc. No. 68] at 5 n.3; *Mayfield*, Schwiebert Decl. [Doc. No. 55] ¶ 12.)

Finally, with respect to the instant FDCPA action, Plaintiffs seek attorney's fees and costs in the following amounts:

<u>Wiley</u>       $39,493.59 ($38,960 in fees[4], $533.59 in costs)

<u>Becker</u>      $43,571.63 ($42,760 in fees, and $811.63 in costs)

<u>Yang</u>       $31,805.87 ($31,280 in fees, and $525.87 in costs)

<u>Mayfield</u>   $30,870 (no costs)

(*See* Pls.' Mem. at 17; *Wiley*, Schwiebert Decl. [Doc. No. 69] ¶ 19 & Ex. F (Wiley FDCPA Billing Stmt.; *Wiley*, Supp'l Schwiebert Decl. [Doc. No. 85] ¶ 3; *Becker*, Schwiebert Decl. [Doc. No. 94] ¶ 19 & Ex. H (Becker FDCPA Billing Stmt.); *Yang*, Schwiebert Decl. [Doc. No. 51] ¶ 19 & Ex. J (Yang FDCPA Billing Stmt.); *Mayfield*, Schwiebert Decl. [Doc. No. 55] ¶ 19 & Ex. J (Mayfield FDCPA Billing Stmt.).)

---

[4]      As noted in the Supplemental Schwiebert Declaration filed in each of the cases, Plaintiffs also request attorney's fees for counsel's work performed in response to PRA's opposition to the instant motions. (*See, e.g., Wiley*, Supp'l Schwiebert Decl. [Doc. No. 85] ¶ 3.)  Mr. Schwiebert states that Plaintiffs collectively incurred more than $8,250 in legal fees in connection with counsel's work in reviewing, analyzing, and responding to Defendant's opposition memorandum. (*Id*.)  This fee-petition legal work increases the fee requests by $2,000 (5.0 x $400/hr.) for Plaintiffs Wiley, Becker, and Yang, and $2,250 (5.0 x $450.hr.) for Plaintiff Mayfield. These additional amounts are reflected in the totals listed above.

### B.      Damages

#### 1.      Standard of Review

As noted, Plaintiffs move for partial summary judgment on damages.  Summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A fact is 'material' if it may affect the outcome of the lawsuit." *TCF Nat'l Bank v. Mkt. Intelligence, Inc*., 812 F.3d 701, 707 (8th Cir. 2016). And a factual dispute is "genuine" only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986).  In evaluating a motion for summary judgment, the Court must view the evidence and any reasonable inferences drawn from the evidence in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 587 (1986).

Although the moving party bears the burden of establishing the lack of a genuine issue of fact, the party opposing summary judgment may not "rest on mere allegations or denials but must demonstrate on the record the existence of specific facts which create a genuine issue for trial." *Krenik v. Cnty. of Le Sueur*, 47 F.3d 953, 957 (8th Cir. 1995) (internal quotation marks omitted); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Moreover, summary judgment is properly entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp*., 477 U.S. at 322.

## 2.      Actual Damages

As noted, the FDCPA permits the recovery of actual damages.  15 U.S.C. § 1692k(a)(1).  Plaintiffs seek to recover their underlying state court attorney's fees and costs as actual damages.  (Pls.' Mem. at 6.)

PRA offers several arguments in opposition.  First, it contends that the underlying attorney's fees are only recoverable as actual damages if Plaintiffs actually paid such fees to their attorney, out-of-pocket.  (Def.'s Opp'n [Doc. No. 72] at 5–6.)  But since Plaintiffs' counsel performed the underlying work pursuant to a contingency-fee agreement, i.e., in exchange for the right to recover fees and a percentage of damages if the FDCPA actions proved to be successful, PRA contends that Plaintiffs offer no credible evidence that their requests for actual damages represent compensation for any out-of-pocket expenditures, nor were they incentivized to mitigate their respective legal fees.  (*Id.*).

Second, PRA challenges the underlying billing statements, arguing that they fail to support Plaintiffs' requests.  (*Id.* at 13–14.)  PRA contends that the majority of the attorney's fees are unrelated to the summons issued in the federal case, are improper and excessive, and were incurred at a billing rate unsupported by any evidence.  (*Id.*)

Finally, PRA characterizes the nature of the FDCPA violation here as a "meaningless and since-abolished state rule of civil procedure" for which Plaintiffs suffered no actual damages.  (*Id.* at 14–17.)  Consequently, PRA contends that Plaintiffs lack a concrete injury sufficient to confer standing.  (*Id.*)

The Court considers these arguments in turn.

> **a.  Attorney's Fees and Costs from Underlying State Court Collection Actions**

The FDCPA authorizes the recovery of "*any* actual damage" sustained by a consumer as a result of a debt collector's violation of the Act, and requires an award of the costs and reasonable attorney's fees incurred in the FDCPA action. 15 U.S.C. § 1692k(a)(1), (3) (emphasis added).

"[A] consensus of district court opinions" have either awarded or recognized attorneys' fees and costs incurred in underlying state court proceedings as actual damages for an FDCPA violation. *Beard v. Ocwen Loan Servicing, LLC*, No. 1:14-CV-1162, 2016 WL 4271765, at *2 (M.D. Penn. 2016) (citing *Walton v. Pereira*, 995 F. Supp. 2d 437, 441 (W.D. Pa. 2014); *Shepherd v. Law Offices of Cohen & Slamowitz*, 668 F. Supp. 2d 579, 580 (S.D.N.Y. 2009); *Evenson v. Palisades Collection, LLC*, No. 2:13-cv-1226, 2014 WL 5089429 at *1-5 (S.D. Ohio Oct. 9, 2014); *Sanko v. Riverwalk Holdings, LTD*, No. 12cv1203, 2013 WL 3821553 at *3-4 (S.D. Cal. May 30, 2013); *Hinderliter v. Legal Recovery Law Offices, Inc.*, No. 12cv2709, 2013 WL 3833982 at *1-2 (S.D. Cal. April 24, 2013); *Armbruster v. Hecker*, No. 3:06-cv-1149, 2010 WL 1643599 at *2 (M.D. Pa. April 22, 2010); *Lowe v. Elite Recovery Solutions L.P.*, No. CIV S-07-0627, 2008 WL 324777 at *3 (E.D. Cal. Feb. 5, 2008); *Owens v. Howe*, No. 1:04-cv-152, 2004 WL 6070565 at *16 (N.D. Ind. Nov. 8, 2004)); *see also Venes v. Prof. Svc. Bureau, Inc.*, 353 N.W.2d 671, 675 (Minn. Ct. App. 1984).  There is no question that here, the underlying collection actions form the basis for Plaintiffs' FDCPA actions, and PRA has often acknowledged the close relationship between the state and federal proceedings.  (*See, e.g.*, *Wiley* [Doc. No. 12] at

1 ("Sonji Wiley's allegations depend upon the outcome of the underlying state court matter that remains pending."); [Doc. No. 13] at 3 ("[I]f the state court enters judgment in favor of PRA, Wiley will be estopped from asserting her positions in this Court based on the doctrine of *res judicata*."); [Doc. No. 16] at 6 ("[T]he instant Court will be bound by the state court's eventual rulings upon issues that are currently pending in that matter."); *id*. at 7 (criticizing Wiley for "presume[ing] that the state court will enter the very rulings that form the basis for her instant claims.").)

Moreover, courts have found that permitting the recovery of underlying attorney's fees as actual damages is consistent with the remedial purpose of the FDCPA, and reflects congressional intent to fully compensate victims of abusive debt practices. *See, e.g.*, *Beard*, 2016 WL 4271765, at *3 (stating that the FDCPA's civil liability and fee-shifting provisions "show an unmistakable congressional intent to make victims of abusive debt practices whole."); *Venes*, 353 N.W.2d at 675 ("noting that "it would be contrary to the purpose of the [FDCPA] to hold as a matter of law that legitimate attorney fees [incurred in the first action] can not be an element of actual damages.").

Although the FDCPA does not define "actual damages," such damages are traditionally defined as "an amount awarded to the complainant to compensate for a proven injury or loss; damages that repay actual losses." *Black's Law Dictionary*, Damages (11th ed. 2019). To obtain actual damages under the FDCPA, courts have held that plaintiffs must show "damages caused in some way by the FDCPA violation," *Gillespie v. Blitt & Gaines, P.C.*, 123 F. Supp. 3d 1029, 1032 (N.D. Ill. 2015), and have found underlying attorney's fees recoverable as actual damages "because the filing of the state court action

*caused* the incurrence of the fees, not because the filing was the basis of the violation." *Beard*, 2016 WL 4271765, at *3.

In support of their motions, Plaintiffs submit declarations from their counsel, Mr. Schwiebert, along with billing statements, setting forth the work he performed in the state court collection actions on behalf of Wiley, Becker, and Yang.  (*Wiley*, Schwiebert Decl. [Doc. No. 69] ¶ 15, Ex. E (Wiley State Ct. Billing Stmt.); *Becker*, Schwiebert Decl. [Doc. No. 94] ¶ 15, Ex. G (Becker State Ct. Billing Stmt.); *Yang*, Schwiebert Decl. [Doc. No. 51] ¶ 15, Ex. I (Yang State Ct. Billing Stmt.).)

However, PRA contends that Plaintiffs' evidence fails to meet the definition of "actual damages" because Plaintiffs neither paid counsel out of their own pockets, nor were they required to do so.  (Def.'s Opp'n at 6–11.)  PRA also points to deposition testimony that purportedly illustrates Plaintiffs' limited understanding of damages and the underlying billing statements.[5]  (*Id.* at 6–10.)  PRA further argues that merely labeling attorney's fees as "actual damages" does not render them an "actual pecuniary loss," particularly because

---

[5]    Specifically, PRA relies on testimony reflecting Ms. Yang's belief that she would not be obliged to pay counsel,  (Def.'s Opp'n at 8) (citing Bakane Aff. [Doc. No. 82], Ex. 2 (Yang Dep.) at 85), as well as Ms. Wiley's confusion as to whether she sought legal fees as actual damages.  (*Id.* at 6–7) (citing Bakane Aff., Ex. 7 (Wiley Dep.) at 39); (*see also* Supp'l Schwiebert Decl. [Doc. No. 97], Ex. A (Wiley Errata Sheet).)  Moreover, PRA points to Plaintiffs' interrogatory answers stating that they did not receive any billing statements for "services that were to be paid by PRA."  (Def.'s Opp'n at 10) (citing Bakane Aff., Ex. 10 (Pls.' Discovery Responses)).  PRA also cites Ms. Wiley's testimony that she had never seen her underlying billing invoices and had no understanding of them, (*id.* at 9) (citing Bakane Aff., Ex. 7 (Wiley Dep.) at 96–99), and Ms. Yang's testimony that she could not state for certain whether she had previously seen the underlying statements.  (*Id.* at 10) (citing Bakane Aff., Ex. 2 (Yang Dep.) at 88).

Plaintiffs "had no incentive, and completely failed, to mitigate any of these purported damages." (*Id*. at 11–12.)   Citing Plaintiffs' deposition testimony, PRA contends that Plaintiffs had little knowledge or involvement in the state court litigation.[6]   (*Id*.)   From this, PRA concludes, "Since Plaintiffs did not expect to or receive billing statements, and since they expected PRA to pay for their state court fees, none would have the knowledge or incentive to understand, let alone mitigate, the 'actual damages' counsel was freely racking up on their behalf."   (*Id*. at 12.)

Indeed, in the underlying litigation, while counsel provided Plaintiffs his hourly billing rate, Plaintiffs were not required to pay him upfront or on an hourly basis.   (Bakane Aff. [Doc. No. 82], Ex. 9 (Underlying Retainer Agmts.), *id*., Ex. 11 (Fed. Retainer Agmts), *id*., Ex. 13 (Solicitation Ltrs.).)   Counsel's representation contemplated both the defense of Plaintiffs' collection actions and the filing of FDCPA actions, (Bakane Aff., Ex. 13 (Solicitation Ltrs.)), for which the federal retainer agreements addressed the potential recovery of actual damages, statutory damages, and attorney's fees, along with the manner in which any recovery would be apportioned between the clients and counsel.   (Bakane Aff., Ex. 11 (Fed. Retainer Agmts).)   Such contingency fee arrangements are common in a variety of settings, such as consumer protection, personal injury, and civil rights.   They provide plaintiffs who otherwise lack legal resources an opportunity to obtain

---

[6]     For example, PRA faults Ms. Yang for her inability to recall why the state court action was filed against her, and faults Ms. Becker for her inability to explain why her state court case went to trial.   (Def.'s Opp'n at 11–12) (citing Bakane Aff., Ex. 2 (Yang Dep.) at 20; *id*., Ex. 8 (Becker Dep.) at 57).

representation by agreeing to share a percentage of any award with counsel, and they likewise encourage attorneys to provide legal services in cases that may be risky or involve only modest potential damages. *See, e.g., Venegas v. Mitchell*, 495 U.S. 82, 86–87 (1990) (stating, in the context of attorney's fee provisions of 42 U.S.C. § 1988, that the aim of the provision is to "enable civil rights plaintiffs to employ reasonably competent lawyers without cost to themselves if they prevail," since it is likely that a "lawyer will undertake a civil rights case on the express or implied promise of the plaintiff to pay the lawyer the statutory award, i.e., a reasonable fee, if the case is won."). Indeed, three of the Plaintiffs here applied for, and were granted, permission to proceed with their federal lawsuits without paying civil filing fees or costs, which strongly suggests that they could not have otherwise litigated their FDCPA claims absent a contingency-fee arrangement with counsel. (*See Wiley* [Doc. No. 4]; *Yang* [Doc. No. 6]; *Mayfield* [Doc. No. 5].)

It is unsurprising that Plaintiffs, none of whom are attorneys, had limited understanding about damages, retainer agreements, and billing statements. Regardless of their subjective understanding, the material question here is whether PRA's filing of the state court actions gave rise to Plaintiffs' underlying legal fees. *Beard*, 2016 WL 4271765, at *3.

There is no disputed issue of fact on that question. Plaintiffs have presented evidence demonstrating that they incurred legal fees based on PRA's filing of the state court collection actions. (Schwiebert Decl. ¶¶ 10–15, Exs. E, G, I.) Counsel bore the risk of that expense on Plaintiffs' behalf, but Plaintiffs incurred the fees as a direct result of PRA's collection actions in state court. Moreover, despite PRA's insistence that only out-

13

of-pocket pecuniary losses are recoverable as actual damages, under the FDCPA, actual damages for non-pecuniary losses such mental anguish, emotional distress, and humiliation are recoverable. *See, e.g.*, *Missey v. Watson Acquisition Grp., LLC*, No. 4:10CV01788 AGF, 2011 WL 864901, at *2  (E.D. Mo. Mar. 10, 2011); *Edeh v. Midland Credit Mgmt., Inc.*, 748 F. Supp. 2d 1030, 1042 (D. Minn. 2010).  Again, the fact that Plaintiffs lacked insight into all of the issues in the state court litigation and the nature of FDCPA actual damages does not alter the undisputed fact that they retained counsel to represent them in the underlying collection actions that PRA commenced and incurred attorney's fees as a result of the underlying litigation.

PRA identifies no legal authority in support of its position that underlying attorney's fees are not recoverable as actual damages where plaintiffs incur the fees pursuant to a contingency-fee agreement.  To the contrary, it appears that in *Hancock v. Legal Recovery Law Offices*, No. 14cv0153 JAH (NLS), 2015 WL 12532470, at *2, 6 (S.D. Cal. June 23, 2015), the court approved an award of actual damages under these circumstances. Although the court did not expressly address the argument that PRA asserts here, its recitation of the facts suggests that representation in the underlying case involved a contingency-fee agreement:  "Plaintiff then retained counsel, Stephen G. Recordon, who agreed to defend plaintiff in return for a promise to pay their defense fees from the damages recovered for defendant's violations of the FDCPA.  Plaintiff's counsel claims he incurred "significant fees defending [plaintiff] all the way to trial" in the state court action."  *Id.* at *2.

Nor is there any basis for PRA's unsupported speculation that because of the contingency-fee arrangement, Plaintiffs had no incentive to mitigate their underlying expenses, allowing counsel to "rack up" state court attorney's fees. The Court has reviewed the underlying billing statements and finds no support for PRA's position on mitigation. Rather, the evidence shows that Plaintiffs incurred the underlying fees as a result of PRA's unlawful collection actions, which PRA vigorously litigated. Accordingly, the Court rejects PRA's unfounded claim that Plaintiffs lacked any incentive to mitigate their underlying legal fees.

### b.      Pleading Requirements

In addition to objecting to the recovery of state court fees as a matter of substance, PRA also objects to any recovery based on alleged pleading deficiencies. It characterizes these damages as a form of special damages that must be specially pleaded and proved. (Def.'s Opp'n at 6) (citing Fed. R. Civ. P. 9(g)).

Typically, "general damages" arise from the proximate and foreseeable consequences of the defendant's conduct. 5A Charles Alan Wright & Arthur R. Miller, *Fed. Prac. & Proc.* § 1310 (4th ed. 2021). "Special damages," on the other hand, result from the wrongful act, but "are not usually associated with the claim in question and must be plead in order to avoid unfair surprise to the defendant." *Tipton v. Mill Creek Gravel, Inc.*, 373 F.3d 913, 922 n.10 (8th Cir. 2004). Because special damages may not be the natural or foreseeable result of a defendant's conduct, a plaintiff seeking special damages must plead them with particularity pursuant to Rule 9(g), which states "If an item of special damage is claimed, it must be specifically stated."

In some contexts, attorney's fees are a form of special damages subject to the particularized pleading requirements of Rule 9(g).  5A Wright & Miller, *Fed. Prac. & Proc.* § 1310.  This primarily arises in cases involving contractual provisions for attorney's fees. *Tipton,* 373 F.3d at 922 (citing *Nat'l Liberty Corp. v. Wal-Mart Stores, Inc.*, 120 F.3d 913, 915 (8th Cir. 1997) (availability of attorney's fees pursuant to the parties' agreement constituted special damages that must satisfy Rule 9(g)); *Maidmore Realty Co., Inc. v. Maidmore Realty Co., Inc.*, 474 F.2d 840, 843 (3d Cir. 1973) (attorney fees available under contract are special damages)).  But here, the FDCPA expressly provides for the recovery of actual damages, 15 U.S.C. § 1692k(a)(1), and courts have granted the recovery of underlying attorney's fees as a form of actual damages because the defendant debt collectors caused the plaintiffs to incur such fees.  *See, e.g., Venes*, 353 N.W.2d at 675; *Beard*, 2016 WL 4271765, at *3.  Permitting such recovery furthers the remedial purposes of the statute by protecting consumers, redressing their injuries, and making it possible for them to pursue their claims.  *Beard*, 2016 WL 4271765, at *3.

Under these circumstances, because the FDCPA contemplates actual damages and courts have permitted the recovery of underlying attorney's fees as actual damages to fulfill the remedial principles of the statute, *see, e.g., Venes*, 353 N.W.2d at 675; *Beard*, 2016 WL 4271765, at *3, Plaintiffs were not required to plead their underlying attorney's fees as special damages pursuant to Rule 9(g).  *See Tipton*, 373 F.3d at 922–23 (finding that "shifting the attorney fees of a successful plaintiff in a shareholder derivative suit to the corporation is not a 'special damage' within the meaning of Rule 9(g), but is a judge created exception based on equitable principles.").  Unlike special damages, Plaintiffs' requests for

underlying attorney's fees here (as a form of actual damages) result from PRA's wrongful conduct of serving defective legal summonses and threatening to obtain default judgments based on those defective summonses. Plaintiffs incurred these actual damages by defending the underlying collection actions, which were so closely associated with the FDCPA claims that PRA cannot claim to be surprised. To the contrary, as the Court has noted, PRA has regularly acknowledged the close relationship between the debt collection actions and these FDCPA lawsuits. (*See, e.g.*, *Wiley* [Doc. No. 12] at 1; [Doc. No. 13] at 3; [Doc. No. 16] at 6; *id.* at 7.)

Moreover, the pleadings gave PRA sufficient notice of the events leading up to FDCPA lawsuit, as they alleged PRA had violated the FDCPA by bringing state court lawsuits in violation of the Minnesota Rules. (*See, e.g.*, *Wiley*, Compl. [Doc. No. 1] ¶¶ 38–45.) And, in Plaintiffs' requests for relief, they requested actual damages. (*See, e.g.*, *id.* ¶ 51 & at 14.) Accordingly, the Court finds that it would be inappropriate to apply the pleading requirements for special damages here.

### c.    Underlying Billing Statements

PRA also contends that the majority of Plaintiffs' state court attorney's fees are unrelated to the defective summonses, are improper and excessive, and were incurred at a billing rate unsupported by any evidence. (Def.'s Opp'n at 12–14.)

The Court disagrees. As to the relation of the defective summonses to the underlying fees that Plaintiffs incurred, again, Plaintiffs incurred fees defending collection actions that, due to PRA's legally defective summons and its threats to obtain default judgment based on the summons, were legally faulty from the outset. *See Beard*, 2016 WL

4271765, at *3 ("Plaintiff need only show that the [FDCPA] violation caused her to incur the fees.").

And while PRA argues that Plaintiffs are not entitled to recover for any underlying billing entries related to issues on which Plaintiffs did not ultimately prevail, a fee petitioner need not prevail on every claim in order to receive attorney's fees. *Armstrong v. Rose Law Firm, P.A.*, No. 00-cv-2287 (MJD/SRN), 2002 WL 31050583, at *4 (D. Minn. Sept. 5, 2002) (Nelson, J.) ("[A] fee award should not be reduced merely because a party did not prevail on every theory raised in the lawsuit."). The underlying *Wiley* and *Yang* matters were ultimately dismissed because PRA failed to properly commence the actions.

PRA further argues that Wiley improperly requests fees "related to litigating state court issues she actually lost on summary judgment," and she "only sought dismissal based on the summons afterwards." (Def.'s Opp'n at 13–14.) However, her counsel eliminated from Wiley's underlying fee request "all time related to Ms. Wiley's unsuccessful motion for summary judgment based upon PRA's failure to comply with the Federal Government's Injunction." (*Wiley*, Schwiebert Decl. [Doc. No. 69] ¶¶ 9–15, Ex. E (Wiley State Ct. Billing Stmt.).)

With respect to Ms. Becker, PRA similarly argues that she seeks to recoup underlying attorney's fees unrelated to the defective summons, noting that in the collection action, Hennepin County Judge Jamie Anderson found that Becker had waived her objection to the summons by participating in the litigation. (Def.'s Opp'n at 13.) But before reaching that conclusion, Judge Anderson nonetheless found the summons was defective. (Bakane Aff., Ex. 1 (*PRA v. Becker*, Nov. 12, 2020 Order & Op.) at 5–8.) PRA

18

also contends that Becker's underlying attorney's fees were higher than Wiley's and Yang's because she chose to go to trial, and thus PRA's faulty summons did not cause her to incur attorney's fees.  (Def.'s Opp'n at 13.)   However, as set forth in counsel's declaration, "Ms. Becker does not seek to recover[] in this case, any fees for work performed following the issuance of Judge Anderson's order confirming that PRA's Summons was deficient but permitting the case to proceed." (*Becker*, Schwiebert Decl. [Doc. No. 94] ¶ 14.)

As to PRA's contention that the underlying billing statements contain "improper and excessive charges," billed at an inflated rate (Def.'s Opp'n at 14), PRA fails to identify any specific instances of improper and excessive charges in the underlying billing statements, nor does it suggest a proper hourly rate for counsel's work in those actions.  If PRA takes issue with Plaintiffs' requests for actual damages, it must identify the entries to which it objects.   Again, Plaintiffs incurred these underlying fees due to PRA's commencement of four faulty collection actions in state court.  They are actual damages, for which Plaintiffs have submitted appropriate documentation.  Further, as discussed in greater detail regarding Plaintiffs' requests for attorney's fees incurred in the federal litigation, the Court finds counsel's billing rate reasonable.

### d.    Standing

Finally, characterizing the nature of the FDCPA claims here as a violation of a "meaningless and since-abolished state rule of civil procedure," PRA argues that Plaintiffs have suffered no actual damages and therefore lack a concrete injury sufficient to confer standing.  (*Id*. at 15–17.)  In particular, PRA asserts that Plaintiffs lack standing because

they did not act to their detriment based on the language of the summons. (*Id*. at 16.) Rather, PRA maintains, Plaintiffs took no action in response to the summons, and merely responded to a form letter from counsel, who undertook the defense of their collection actions. (*Id*.)

The Court previously considered and rejected PRA's argument on standing. (Mar. 1, 2021 Order at 8 n.3, 12 n.5) ("Plaintiffs have standing."); *Mayfield*, Aug. 9, 2021 Order at 6–9) (The threat to obtain an invalid default judgment caused a concrete, particularized injury to Mayfield."). PRA has not requested reconsideration of this issue, *see* D. Minn. L. R. 7.1(j), and identifies no new evidence or any changes in the law that would cause the Court to alter its prior rulings. Accordingly, the Court continues to find that Plaintiffs have standing and they are not precluded from obtaining actual damages.

In sum, the Court finds that Plaintiffs are entitled to underlying attorney's fees as actual damages under 15 U.S.C. § 1692k(a)(1), and they have standing to seek such relief. Accordingly, the Court awards actual damages as follows: (1) $22,150 for Wiley; (2) $43,320 for Becker; (3) $13,960 for Yang; and (4) $0 for Mayfield, who requests no actual damages.

### 3.   Statutory Damages

Plaintiffs each request an award of $1,000 in statutory damages pursuant to 15 U.S.C. § 1692k(a)(2)(A). (Pls.' Mem. at 8–11.) They contend that an award of damages is warranted and is supported by consideration of the following factors: (1) the frequency, persistence, and nature of the debt collector's noncompliance with the FDCPA; (2) the debt collector's resources; (3) the number of individuals adversely affected; and (4) the extent

to which the debt collectors noncompliance was intentional. (*Id.* at 9) (citing 15 U.S.C. § 1692k(b)(2)).  As to the number of individuals adversely affected, Plaintiffs contend that PRA has used its defective summons and false threats to sue thousands of Minnesota consumers. (*Id.* at 11.)

In response, PRA argues that Plaintiffs fail to meet their burden of demonstrating any entitlement to statutory damages. (Def.'s Opp'n Mem. at 17–20.)  PRA contends that Plaintiffs incorrectly apply the factors applicable to statutory damages in class actions, as opposed to the factors applicable to statutory damages in individual actions. (*Id.*) Moreover, PRA portrays Plaintiffs' requests as "histrionic[]," based on "speculation" and improper evidence. (*Id.*)  It argues that application of the correct factors demonstrates that statutory damages are unwarranted for a minor, technical error based on a procedural rule no longer in force. (*Id* at 19–20.)

The FDCPA authorizes the award of statutory damages of up to $1,000 for each individual plaintiff. 15 U.S.C. § 1692k(a)(2)(A).  To be eligible for statutory damages, Plaintiffs must simply establish that the FDCPA has been violated. *Id.*; *Lester E. Cox. Med. Ctr. v. Huntsman*, 408 F.3d 989, 993 (8th Cir. 2005).  Plaintiffs have done so.  To determine the award amount, the Court considers: (1) the frequency and persistence of noncompliance; (2) the nature of such noncompliance; and (3) the extent to which the noncompliance was intentional. 15 U.S.C. § 1692k(b)(1).

As to Plaintiffs' contention that PRA's conduct has affected thousands of other consumers, (Pls.' Mem. at 11), courts differ over whether it is proper to consider the same debt collector's conduct or communication towards non-party consumers when calculating

statutory damages for an individual plaintiff.  *See Klein v. Affiliated Grp., Inc.*, No. 18-cv-949 (DWF/ECW), 2019 U.S. Dist. LEXIS 48019, at *17-18 (D. Minn. Mar. 22, 2019), *aff'd on other grounds* 994 F.3d 913 (8th Cir. 2021) (collecting cases and summarizing split in authority).  However, the Court need not resolve this issue for two reasons.  First, the FDCPA instructs courts to take into account the criteria relevant to individual actions "among other factors." 15 U.S.C. § 1692k(b).  Plaintiff's erroneous reference to the class action factors is not fatal because neither the class action nor the individual factors are exhaustive.  But more fundamentally, the Court has enough evidence from these four Plaintiffs to determine that the full amount of statutory damages is warranted, without regard to whether Defendant engaged in the same conduct with non-party consumers.

Using identical language with all four Plaintiffs, PRA sent its defective summons and threatened to obtain default judgment for Plaintiffs' failure to respond.  (Mar. 1, 2021 Order at 2–3.)  The consistency of the boilerplate language demonstrates that this conduct was not an aberration for PRA.  As to the four Plaintiffs here, PRA's conduct was persistent and intentional, and the nature of its conduct rendered the commencement of all of the underlying proceedings invalid.  *See* 15 U.S.C. § 1692k(b)(1).  PRA continued to use its defective summons and persisted in its attempts to avoid the consequences, even though Minnesota state court judges found the summons defective as early as May 2020.  (*See, e.g.,* Bakane Aff., Ex. 6 (*Mayfield* Henn. Cnty. June 28, 2021 Order) (noting three other rulings by Hennepin County judges, as well as by the undersigned federal judge, finding PRA's summons to be defective, and stating that "a pro se consumer debtor would not be in a position to contest an issue such as this, without the advice of legal counsel, and in this

22

case, [PRA] knew as early as May of 2020 that its summons in this case was defective, and chose to do nothing about it.").)

And, in federal court, despite this Court's rulings against PRA's motions to dismiss the *Wiley*, *Becker*, and *Yang* actions, and in favor of Plaintiffs' partial summary judgment motions on liability, PRA continued to defend its defective summons in *Mayfield*. PRA's violation was more than technical. As this Court has previously explained, threatening to obtain a default judgment PRA could not legally obtain, and then obtaining that judgment, plainly impedes the FDCPA's purpose of protecting consumers from misleading communications. (*Mayfield*, Aug. 9, 2021 Order at 11–15.)

Under these circumstances, the Court finds that each Plaintiff is entitled to the maximum statutory damages of $1,000 pursuant to 15 U.S.C. § 1692k(a)(2)(A).

### C.    Attorney's Fees and Costs

Prevailing plaintiffs in an FDCPA action are entitled to an award of costs and reasonable attorney's fees. 15 U.S.C. §§ 1692k(a)(3). As noted, Plaintiffs request attorney's fees and costs incurred in counsel's representation in the instant case in the following amounts: (1) $39,493.59 for Wiley; (2) $43,571.63 for Becker; (3) $31,805.87 for Yang; and (4) $30,870 for Mayfield.[7]

---

[7]    Again, the requested amounts include the additional $2,000 each for Mayfield, Becker, and Yang, and $2,250 for Mayfield, based on Mr. Schwiebert's additional work in response to PRA's opposition to the instant motions. (*See Wiley*, Supp'l Schwiebert Decl. [Doc. No. 85] ¶ 3.)

1.    **Use of Lodestar Calculation to Determine Reasonable Attorney's Fees**

The amount of an attorney's fee award must be determined on the facts of each case and is within the district court's discretion. *Hensley v. Eckerhart*, 461 U.S. 424, 429, 437 (1983); *see Hanig v. Lee*, 415 F.3d 822, 825 (8th Cir. 2005) (citation omitted) ("Attorney's fees are within the broad discretion of the district court . . . ."). The starting point for determining a reasonable attorney's fee is the "'lodestar'" calculation, which is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate. *Hanig*, 415 F.3d at 825 (citation omitted); *see Hensley*, 461 U.S. at 433. The fee applicant "should submit evidence supporting the hours worked and rates claimed." *Hensley,* 461 U.S. at 433. If "the documentation of hours is inadequate, the district court may reduce the award accordingly." *Id.*

The Supreme Court, citing *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974), has identified several factors relevant to the determination of reasonableness (the "*Johnson* factors"):

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Id.* at 429–30 n.3.

However, in determining the lodestar, courts "need not, and indeed should not, become green-eyeshade accountants. The essential goal in shifting fees (to either party) is to do rough

justice, not to achieve auditing perfection." *Fox v. Vice*, 563 U.S. 826, 838 (2011). Courts "may take into account their overall sense of a suit, and may use estimates in calculating and allocating an attorney's time." *Id*. But "[t]he determination of fees 'should not result in a second major litigation.'" *Id.* (quoting *Hensley*, 461 U.S. at 437).

## 2. Reasonable Rate

Generally, to determine whether an hourly rate is reasonable, courts look at the rates "prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984); *accord McDonald v. Armontrout*, 860 F.2d 1456, 1458–59 (8th Cir. 1988). "District courts may rely on their own experience and knowledge of prevailing market rates." *Hanig*, 415 F.3d at 825. The party seeking an award of fees should submit evidence supporting the . . . rates claimed." *Hensley*, 461 U.S. at 433.

In support of the reasonableness of Mr. Schwiebert's hourly billing rates, Plaintiffs submit Mr. Schwiebert's declarations, billing statements, and curriculum vitae. (*See, e.g.*, *Wiley*, Schwiebert Decl. [Doc. No. 69], Exs. C (curriculum vitae), E (*Wiley* State Ct. Billing Stmt.), F (*Wiley* FDCPA Billing Stmt.).) Mr. Schwiebert has been admitted to practice in Minnesota since 1995 and is an attorney in good standing. (*Wiley*, Schwiebert Decl. [Doc. No. 69] ¶ 3.) He is an experienced state and federal litigator with expertise in FDCPA actions, and has filed, litigated, handled, and/or settled at least 67 FDCPA claims in Minnesota on behalf of consumers. (*Id*. ¶ 7.) In addition, Mr. Schwiebert has experience litigating FDCPA appeals in the Eighth Circuit, where he has obtained a reversal in his client's favor in an FDCPA action. (*Id*. ¶¶ 7–8.)

25

When he undertook representation of Wiley, Becker, and Yang, Mr. Schwiebert agreed to work on a contingency-fee basis, with a billing rate of $400 per hour for his work in the *Wiley*, *Becker*, and *Yang* FDCPA actions and underlying collection actions, and $450 per hour for his work on the later-filed *Mayfield* FDCPA action.[8] (*Id.* ¶ 9.)   Although his current hourly rate for such work is $450 per hour, Plaintiffs Wiley, Becker, and Yang seek recovery at the $400 hourly rate, pursuant to their retainer agreements. (*Id.* ¶ 20.) Schwiebert asserts that the rate of $400 is at the lower end of the range he currently charges his consumer law clients, including clients billed by the hour, whereas the rate of $450 is in the middle of the range, and these rates are consistent with billing rates for attorneys with over 20 years of experience. (*Id.*)

Schwiebert also notes that between 2012 and 2018, courts have found hourly rates of $400 to $425 reasonable in similar cases. (*Id.* ¶¶ 21–22, 25) (citing *Price v. Midland Funding LLC*, No. 18-cv-509 (SRN/SER), 2018 WL 5259291, at *5 (D. Minn. 2018) (awarding fees at rate of $400 per hour); *Rosario v. Kariel Staging & Décor, Inc.*, No. 27-cv-16-13140 (Henn. Cnty. Dec. 15, 2017 Order) (granting attorney's fees at $400 hourly rate); *Gupta v. Arrow Fin. Serv. LLC*, No. 09-cv-3313 (SRN/SER), 2012 WL 1060054, at *1–2 (D. Minn. Mar. 29, 2012) (awarding fees at requested hourly rate of $425)).

In addition to his own declaration, Schwiebert submits a declaration from Twin Cities attorney David P. Swenson, of Larkin Hoffman, previously filed in *Price*, 2018 WL 5259291.

---

[8]   Again, Mayfield does not seek attorney's fees for the work performed in her underlying collection action.

(*Wiley*, Swenson Decl. [Doc. No. 69-4].)  Mr. Swenson, a licensed Minnesota attorney in good standing, states that he has practiced law at other professional law firms in the Twin Cities, and is familiar with the prevailing norms and practices for attorneys' billing fees within the Twin Cities.  (Swenson Decl. ¶¶ 5, 8.)  He has known Schwiebert since 1995, has consulted with him numerous times, and on one occasion, retained Schwiebert to assist in a collections matter.  (*Id*. ¶¶ 9, 10.)  Swenson states that Schwiebert is a well-regarded federal litigator with specialized experience in consumer law and the FDCPA.  (*Id*. ¶ 12.)  Swenson believes that Schwiebert's billing rate of $400 per hour for work performed in one of his specialty areas is "on the low end of the range of reasonable hourly fees charged by lawyers of comparable experience and expertise."  (*Id*. ¶ 13.)

In opposition, PRA argues that counsel's billing rate is excessive and is unsupported by sufficient evidence, citing authority for the proposition that attorney declarations are entitled to little weight and are "suspicious" because declarants "ha[ve] an incentive to inflate their wages."  (Def.'s Opp'n at 20–21) (citing *Arana v. Monterey Fin'l Servs., Inc.*, No. 15cv2262-LAB (BGS), 2016 WL 1324269 (S.D. Cal. Apr. 5, 2016)).

The Court disagrees.  First, the attorney declarations here are relevant and helpful to establish counsel's standard billing rate, and to provide evidence of the prevailing rate in the community for comparable legal work.  In fact, the Court has observed that "[f]requently, when moving for or opposing a fee petition, parties submit affidavits from local practitioners who opine on the reasonableness of attorneys' hourly rates, billing for legal services, and attorneys' standing and reputation in the local legal community." *Harris v. Chipotle Mexican Grill, Inc*., No. 13-CV-1719 (SRN/SER), 2018 WL 617972, at \*6 (D.

Minn. Jan. 29, 2018). The Court has no reason to question the sworn declarations of Mr. Schwiebert and Mr. Swenson, nor does PRA provide any supportable reason to do so. To the contrary, the attorneys' declarations are persuasive evidence of the reasonableness of Mr. Schwiebert's hourly rates.

In fact, as noted, Mr. Schwiebert has been awarded fees at a $400 hourly rate in the past, in decisions from four to five years ago. *Price*, 2018 WL 5259291, at *5; (*see* Schwiebert Decl. ¶ 22) (citing *Rosario*, No. 27-cv-16-13140 (Henn. Cnty. Dec. 15, 2017 Order)). In an earlier FDCPA action involving a different local attorney, this Court awarded attorney's fees at a $425 hourly rate, stating—in 2012—"there is sufficient case law in this district to support an hourly rate of between $350–450 per hour in consumer law cases, commensurate with a given attorney's experience and expertise." *Gupta*, 2012 WL 1060054, at *2 (citing *Poechmann v. Alerus Financial*, No. 10-CV-4186 (SRN/FLN) (D. Minn. Jan. 30, 2012) (Nelson, J.) [Doc. No. 62] (awarding plaintiff's lead local counsel, who possessed over 40 years' experience, a $400–450 hourly rate in a class action lawsuit); *Phenow v. Johnson, Rodenberg & Lauinger, PLLP*, 766 F. Supp. 2d 955 (D. Minn. 2011) (Keyes, J.) (awarding a $350 hourly rate in an FDCPA case); *Wiley v. A & K Auto Sales*, No. 06–CV–4611 (DWF/AJB) (D. Minn. Mar. 5, 2010) (awarding a rate of $400 per hour to plaintiff's counsel); *Hixon v. City of Golden Valley*, No. 06–CV–1549 (RHK/JSM), 2007 WL 4373111, at *2 (D. Minn. Dec. 13, 2007) (Kyle, J.) (awarding plaintiff's lead attorney a $400 hourly rate)).

Because the Court found an hourly rate of $425 reasonable in the time-intensive *Gupta* litigation in 2012, in which it cited similar awards from even older cases, 2012 WL

1060054, at *2, the requested rates here for similarly time-intensive work are likewise reasonable, particularly given a presumptive rise in legal fees over the course of a decade. *See Price*, 2018 WL 5259291, at *5 (accounting for rise in billing rates over six-year period when comparing prior legal authority). While PRA fails to identify an alternative reasonable hourly rate for Schwiebert's work, it cites *Meidal v. Messerli & Kramer, P.A.*, in which the court awarded attorney's fees to Mr. Schwiebert in an FDCPA case at a reduced hourly rate of $300. No. 18-cv-985 (PAM/BRT), 2018 WL 4489693, at *2 (D. Minn. Sept. 19, 2018). However, the court reduced the fee award in *Meidal* because the case required minimal attorney time and effort. *Id.* (noting that counsel "achieved a favorable outcome for his client before an answer was even filed."). Judge Magnuson distinguished the facts of *Meidal* from other decisions awarding a $400 hourly rate, noting that the other cases "required substantially more litigation than the case at hand," and were "litigated for well over a year with many more issues handled." *Id.* (citations omitted). Indeed, as the Court discusses in greater detail below, the parties here heavily litigated these cases over the course of months and years. They engaged in significant dispositive motion practice, discovery, and the instant motions. *Meidal* is entirely distinguishable from the instant litigation.

Moreover, counsel's hourly rates of $400 and $450 reflect the fact that Mr. Schwiebert has over 25 years of experience in litigation, including several years of experience in consumer law.

For all of these reasons, the Court finds that Mr. Schwiebert's hourly rate of $400 for work performed in *Wiley*, *Becker*, and *Yang*, and $450 for work performed in *Mayfield*

to be reasonable, and supported by the submitted evidence. Furthermore, these rates are reasonable based on the Court's own experience and knowledge of prevailing market rates. *Hanig*, 415 F.3d at 825.

### 3.    Reasonable Hours Expended

Plaintiffs argue that the first, second, third, and seventh *Johnson* factors (time and labor required, difficulty of the questions, requisite skill, and circumstances of the client) justify their respective fee requests. (Pls.' Mem. at 18.) They contend that these were not run-of-the-mill cases of technical FDCPA violations, but instead, counsel was required to review the underlying pleadings to identify the FDCPA violations, including assessing compliance with state procedural rules and related deceptive statements. (*Id.* at 18–19.)

PRA argues that the amounts of Plaintiffs' fee requests are unreasonable for the following reasons: (1) counsel excessively expended these hours on cases involving "mere technical violation[s]"; (2) the amount of Plaintiffs' fee requests are not commensurate the success they obtained; (3) counsel's level of expertise should have enabled him to more efficiently litigate the FDCPA claims, resulting in lower fees; and (4) counsel included non-billable administrative tasks in block billing, and inflated time by billing the same task to multiple clients. (Def.'s Opp'n at 25–30.) It urges the Court to reduce the amount of Plaintiffs' fee requests by at least 75%. (*Id.* at 26.)

The Court addresses these arguments and considers the *Johnson* factors applicable to an award of attorney's fees here.

### a.     The Time and Labor Required and the Novelty and Difficulty of the Questions

Again, PRA criticizes Plaintiffs' fee requests as excessive, particularly because the cases involved "a mere technical violation." (*Id.* at 22–23.) This argument invokes the first two *Johnson* factors concerning "the time and labor required" and "the novelty and difficulty of the questions." 461 U.S. at 429–30 n.3. Plaintiffs contend that consideration of these factors supports the award of attorney's fees. (Pls.' Mem. at 18–19.)

Again, this case did not involve "a mere technical violation." As this Court previously found, threatening a plaintiff with default judgment if the plaintiff fails to respond to a faulty summons is a material threat, in violation of the FDCPA. (Mar. 1, 2021 Order at 7.) In state court, Hennepin County Judge Mary Vasaly reached the same conclusion in PRA's collection action against Yang, stating, "The Court agrees with Ms. Yang that the defects in the Summons were more than mere technical errors." (*Yang*, Schwiebert Decl. [Doc. No. 41], Ex. I (*Yang*, July 31, 2020 Order).) The Court also observes that Plaintiffs' FDCPA actions, based on a defective summons filed in state court, are unusual.

PRA did not litigate these cases as if they involved commonplace technical violations. When Plaintiffs Wiley, Becker, and Yang filed their FDCPA actions in March 2020, PRA promptly moved to stay the cases, or in the alternative, dismiss them. (*See, e.g., Wiley* [Doc. No. 12].) After the Court denied these motions, (*id.* [Doc. No. 24]), PRA answered the complaints and moved for judgment on the pleadings, (*id.* [Doc. No. 34] which the Court also denied. (Mar. 1, 2021 Order.) Subsequently, in *Mayfield*, even after

the Court had ruled for Plaintiffs in the first three actions, PRA continued to defend its faulty summons and urged the Court to reverse its previous rulings on summary judgment. (*Mayfield* [Doc. Nos. 15, 16, 28].) Throughout the underlying actions and the FDCPA actions, although state and federal courts consistently found PRA's summons defective, it continued to fiercely contest Plaintiffs' claims.

PRA was free to do so, of course. But at each step of the way, its tenacious conduct increased Plaintiffs' attorney's fees. *See, e.g., Riverside v. Rivera*, 477 U.S. 561, 580 n.11 (1986) ("[A defendant] cannot litigate tenaciously and then be heard to complain about the time necessarily spent by the plaintiff in response.") (quotation omitted); *Ewald v. Royal Norwegian Embassy*, No. 11-cv-2116 (SRN/SER), 2015 WL 1746375, at *15 (D. Minn. Apr. 13, 2015) (noting that "a heavily-litigated case is not typically a one-sided affair," which explains why [plaintiff's] attorney's fees and costs are relatively high."); *I-Sys., Inc. v. Softwares, Inc.*, No. 02-cv-1951 (JRT/FLN), 2005 WL 1430323, at *12 (D. Minn. Mar. 7, 2005) (noting that "the extent of the work expended by plaintiffs' attorneys was not conducted in a vacuum. Rather, much of plaintiffs' attorneys' effort was spent responding to defendants' three sets of attorneys, whose participation and output in this case was prodigious."). Here, for example, Plaintiffs' counsel expended considerable time responding to PRA's six unsuccessful motions to stay or obtain judgment in these cases. As the court observed in *Armstrong v. Rose Law Firm, P.A.*,

> The Court recognizes that Defendant was free to pursue its theory of defense and incorporate it into a motion for summary judgment. But the result of Defendant's strategy was further litigation. And because its theory failed, Defendant is now obligated to pay the fees Plaintiff incurred while her attorney was responding to this defense.

2002 WL 31050583, at *3.

Moreover, PRA presented its vigorous defense with full knowledge that the FDCPA mandates an award of attorney's fees to prevailing plaintiffs. *See In re RFC*, 399 F. Supp. 3d 827, 860 (D. Minn. 2019) (noting that although defendant was entitled to present a vigorous defense, it did so with the knowledge that the parties' contractual agreement contemplated an award of attorneys' fees).

Finally, PRA combines Plaintiffs' counsel's hours in the federal actions, calculating a total of 331.1 hours, not including the additional 20 hours for fee-petition related work, in support of its argument that Plaintiffs' fee requests are excessive. (Def.'s Opp'n at 20.) Even including the additional 20 hours of time, Plaintiffs incurred fees in the FDCPA action based on approximately 88 hours in each of their cases. These are four individual actions, for which Plaintiffs request attorney's fees individually. The Court does not find the amount of time spent on each of the federal actions to be unreasonable.

The Court finds that consideration of the first two *Johnson* factors—the time and labor involved, and the novelty and difficulty of the questions—support the general reasonableness of Plaintiffs' fee requests.

### b.    Requisite Skill

The Court finds that consideration of the third *Johnson* factor—the skill requisite to perform the legal service properly—is reflected in the reasonableness of counsel's hourly rates and is therefore subsumed in the lodestar calculation.

### c.    The Clients

Plaintiffs assert that consideration of the seventh *Johnson* factor, which they characterize as "the circumstances of the client[s]," also supports the reasonableness of their fee requests.   They contend that because they are neither sophisticated nor experienced litigants, counsel was required to expend additional time ensuring that they understood the nature of their cases and the potential implications of each event.  (Pls.' Mem. at 19.)

The seventh *Johnson* factor—"time limitations imposed by the client or the circumstances", *Hensley*, 461 U.S. at 429–30 n.3—suggests consideration of time limitations imposed by the circumstances, given the use of the disjunctive "or," rather than consideration of the general circumstances of the client.   Consideration of the clients' circumstances is perhaps best evaluated under the first *Johnson* factor, "the time and labor required," or the eleventh factor, "the nature . . . of the professional relationship with the client."  *Id.*  Under either factor, counsel's need to regularly and fully communicate with Plaintiffs lends support to the reasonableness of their fees.

### d.    Fees for Preparation of Fee Petitions

A portion of Plaintiffs' fee requests contemplate an award for work performed in preparing the instant motions.  (*See*, *e.g.*, Schwiebert Decl. [Doc. No. 69], Ex. F (Wiley FDCPA Billing Stmt.) at 4) (listing work performed in preparing the fee petition on September 21, 27, and 29, 2021).  Plaintiffs further seek an additional $8,200 in fees for counsel's work in reply to PRA's opposition to the instant motions.  (Supp'l Schwiebert Decl. [Doc. No. 85] ¶ 3.)  Plaintiffs have each incurred five hours of counsel's time, at the

$400 hourly rate for Wiley, Becker, and Yang (resulting in additional fees of $2,000 each in their cases), and at the $450 hourly rate for Mayfield (resulting in additional fees of $2,250). (*Id*.) Although Mr. Schwiebert attests that the time spent actually exceeded 20 hours, he reduced the time to 20 hours, for a total of 5.0 hours per case. (*Id*.)

"Attorneys are entitled to compensation for work litigating their claim to attorneys' fees," *Does 1-100 v. Dakota County, Minn.*, No. CIV. 4-84-378, 1986 WL 7554, at *5 (D. Minn. Jan. 8, 1986) (citing *Jones v. MacMillian Bloedel Containers, Inc*., 685 F.2d 236, 239 (8th Cir. 1982); *Bond v. Stanton*, 630 F.2d 1231, 1235 (7th Cir. 1980)), and fees for such work have been awarded in FDCPA actions. *See Bell v. Am. Accounts & Advisers, Inc.*, No. 18-cv-2474 (MJD/ECW), 2018 WL 6718573, at *5–6 (D. Minn. Nov. 15, 2018), *report & recommendation adopted*, 2019 WL 1405606 (D. Minn. Mar. 28, 2019); *Bankey v. Phillips & Burns, LLC*, No. 07-cv-2200 (DWF/RLE), 2008 WL 2405773, at *6 (D. Minn. June 11, 2008). PRA does not appear to specifically object to counsel's hours spent preparing and litigating the fee petitions. Accordingly, the Court finds that these fees are generally recoverable, absent any overall reductions, addressed below.

### e.    Amount Involved and Results Obtained

PRA urges the Court to apply a 75% overall reduction to Plaintiffs' fee request**s**, citing authority for the proposition that fees should be commensurate with success. (Def.'s Opp'n at 22–23.) Essentially, PRA argues that Plaintiffs obtained little success because they "do not even seek true actual damages," and "have established a technical statutory violation that fundamentally serves zero public purpose." (*Id*. at 23) (citing *Obenauf v. Frontier Fin'l Grp*., *Inc*., 785 F. Supp. 2d 1188, 1214–15 (D.N.M. 2011)).

The Court finds that this argument implicates, in part, the eighth *Johnson* factor—the amount involved and the results obtained.[9]  Again, courts may award actual damages and statutory damages to prevailing FDCPA plaintiffs.  15 U.S.C. § 1692k(a)(1)–(3); *see, e.g.*, *Beard*, 2016 WL 4271765, at *2–3.  The Court granted summary judgment to Plaintiffs, and through this Order on the instant motions, Plaintiffs will obtain actual damages and statutory damages.  This is a successful outcome, by any measure.

PRA persists in minimizing the significance of its violation of state and federal law, and further asserts that this litigation serves "zero public purpose."  The Court disagrees.  The FDCPA requires debt collectors to be truthful and accurate in their communications with consumers and to refrain from threatening any action that cannot legally be taken.  *See* 15 U.S.C. §§ 1692e, e(5).  In Becker's underlying collection action, Judge Anderson found that PRA's defective summons "hinder[ed] [consumers'] ability to answer and defend [their collection] case[s]."  (Schwiebert Decl. [Doc. No. 41]), Ex. A (*Becker*, Nov. 12, 2020 Order).)  And here, the Court found that "[t]he threat to obtain a default judgment, especially an invalid one, is unquestionably material."  (*Mayfield*, Aug. 9, 2021 Order at 15.)  Plaintiffs prevailed on the merits.  Thus, the facts here are quite unlike the "modest success" obtained by the plaintiff in *Obenauf*, where liability under the FDCPA was not established on the merits, but through default judgment.  785 F. Supp. 2d at 1219–20 (reducing requested fee award where plaintiff prevailed on a procedural device, and

---

[9]    In the same portion of PRA's opposition memorandum, it also contends that Plaintiffs' fee requests are excessive, (Def.'s Opp'n at 22–26), which the Court addresses separately below.

commenting that "full attorney's fees are better awarded in egregious cases or cases that stand firmly on their merits.").

As to any requirement that the results obtained be in proportion to the amount of the overall fee award, when Congress enacts a statutory scheme such as the FDCPA that provides for statutory damages and fee shifting, "the amount of attorney fees need not be proportionate to the amount of damages recovered." *Phenow*, 766 F. Supp. 2d at 959 (awarding $11,126.70 in attorney's fees and costs to FDCPA plaintiff, where parties settled for statutory damages of $1,000) (citing *Loggins v. Delo*, 999 F.2d 364, 368 (8th Cir. 1993) (acknowledging in action brought under 42 U.S.C. §§ 1983, 1988 that "proportionality between the amount of damages and fee awards was not required")).

As the Court observed in *Phenow*, consumer protection statutes are similar to civil rights statutes, in that they "are designed to make it possible for consumers to prosecute violations of the law and thus incentivize defendants to behave in a way that does not violate consumers' legitimate interests." *Id.* In civil rights litigation, the Supreme Court has observed that requiring proportionality between fee awards and the amount of awarded damages "would make it difficult for individuals with meritorious civil rights claims but relatively small potential damages to obtain redress from the courts." *Id.* (quoting *City of Riverside*, 477 U.S. at 574) (rejecting rule of proportionality in an award of attorney's fees under § 1988). Similarly, in the context of consumer protection statutes such as the Fair Credit Reporting Act ("FCRA"), where "there will rarely be extensive damages," a requirement that attorney's fees be proportionate to the amount recovered "would discourage vigorous enforcement of the Act." *Id.* (quoting *Yohay v. City of Alexandria*

37

*Emps. Credit Union, Inc.*, 827 F.2d 967, 974 (4th Cir. 1987)). As in *Phenow*, and *Armstrong*, where the Court awarded fees and costs of more than $40,000 in an FDCPA case with $1,000 in statutory damages, Plaintiffs here "did not choose to create [any] disparity" between their fee requests and the awarded damages. 2002 WL 31050583, at *5. While a defendant is entitled to aggressively defend its case, such a defense may "produce[] a large amount of litigation, and significantly increase[] the number of hours" a plaintiff's attorney commits to a case. *Id.* That is the case here, and the Court finds no reason to reduce attorney's fees based on proportionality.[10]

### f.      Nonbillable Tasks and Excessive Time

PRA argues that Plaintiffs' billing statements improperly use block billing to incorporate nonbillable administrative tasks and inflated, excessive time into Plaintiffs' fee requests. (Def.'s Mem. at 22–30.) Because block billing makes it difficult to determine the amount of time spent on nonbillable tasks, PRA argues that an across-the-board 75%

---

[10]    Moreover, among Plaintiffs, not every Plaintiff seeks an award of attorney's fees that is disproportionate to the amount of damages awarded. In *Wiley*, the Court awards $23,120 in damages ($22,120 in actual damages + $1,000 in statutory damages), and her attorney's fee request is $38,960. (*Wiley*, Schwiebert Decl. [Doc. No. 69] ¶ 19; *Wiley*, Supp'l Schwiebert Decl. [Doc. No. 85] ¶ 3.) In *Becker*, the Court awards $44,320 in damages ($43,320 in actual damages + $1,000 in statutory damages), and her attorney's fee request for $42,760 is smaller than her damages award. (*Becker*, Schwiebert Decl. [Doc. No. 94] ¶ 19; *Becker*, Supp'l Schwiebert Decl. [Doc. No. 110] ¶ 3.) In *Yang*, the Court awards $14,960 in damages ($13,960 in actual damages + $1,000 in statutory damages), and her attorney's fee request is $31,280. (*Yang*, Schwiebert Decl. [Doc. No. 51]; *Yang*, Supp'l Schwiebert Decl. [Doc. No. 67] ¶ 3.) In *Mayfield*, the Court awards $1,000 in statutory damages, she requests no actual damages, and her attorney's fee request is $30,870. (*Mayfield*, Schwiebert Decl. [Doc. No. 55] ¶ 19; *Mayfield*, Supp'l Schwiebert Decl. [Doc. No. 71] ¶ 3.)

fee reduction is warranted.  (*Id.* at 22–23) (citing *Heroux v. Callidus Portfolio Mgmt., Inc.*, No. 17-cv-5132 (HB), 2019 WL 92728, at *7 (D. Minn. Jan. 3, 2019) (applying 45% overall reduction to plaintiff's fee request)).

"[B]lock billing is the lumping together of daily time entries consisting of two or more task descriptions." *King v. Turner*, 05–CV–388 (JRT/FLN), 2007 WL 1219308, at *3 (D. Minn. April 24, 2007).  While "[i]nadequate documentation may warrant a reduced fee," fees may be awarded based on block-billed time entries.  *Nassar v. Jackson*, 779 F.3d 547, 554 (8th Cir. 2015) (finding no abuse of discretion in awarding fees based on block-billed time entries).   Indeed, PRA appears to agree that "'block billing is problematic only where the hours billed for multiple tasks appear[] excessive, or where billed time needs to be eliminated for certain tasks.'" (Def.'s Mem. at 26) (quoting *Nathanson v. Diversified Adjustment Serv., Inc.*, No. 18-cv-3102 (PJS/ECW), 2019 WL 4387960, at *5 (D. Minn. Sept. 13, 2019)).  The Court therefore turns to PRA's arguments concerning improper fee requests that include administrative tasks and duplicative or redundant work, which it claims are found in Plaintiffs' counsel's block-billed time entries.

### (1) Administrative Tasks

Although Mr. Schwiebert is a solo practitioner and handles all of his own administrative tasks, PRA contends that the task of "filing [documents]"—found in several block-billed time entries in these cases—is part of normal overhead costs and is not properly recoverable as an item of attorney's fees.  (Def.'s Mem. at 27) (citing *Arana*, 2016 WL 1324269, at *3).  It notes that because counsel's references to "filing [documents]" appear in block-billed time entries, it is difficult to determine the precise amount of time

spent on such tasks.  (*Id*.)  Consequently, PRA suggests that an overall 75% fee reduction appropriately accounts for this issue, among other things.

Although the Court appreciates that Mr. Schwiebert is a solo practitioner, certain tasks that are administrative or clerical in nature cannot fairly be accounted for at an attorney's billing rate.  *Harris*, 2018 WL 617972, at *10 (citing *Rosen v. Wentworth*, 13 F. Supp. 3d 944, 952–53 (D. Minn. 2014)).  It is true that in Plaintiffs' billing statements, references to "filing [documents]" appear in block-billed time entries.  (*See, e.g., Wiley*, Schwiebert Decl., Ex. F (*Wiley* FDCPA Billing Stmts.) at 1–4.)  Indeed, filing is an administrative task, and block billing makes it difficult to determine how much time is spent on filing.  The Court notes, however, that in these time entries, "filing," is typically the final act related to the document in question.  (*See id.* at 1 (July 31, 2020 entry, stating, "Revised, finalized, and filing of [legal document]."; *id*. at 2 (November 17, 2020 entry, stating, "Drafted and filed [legal document].")  The United States District Court for the District of Minnesota requires that legal documents be filed electronically, D. Minn. L.R. 5.1, and in each instance of a "filing," Plaintiffs' counsel did so.  Although the task of electronic filing is of relatively short duration, it is difficult to determine the precise amount of time counsel spent on this non-compensable task.  The Court finds that a modest overall reduction of 5% to Plaintiffs' fee requests for work performed in the federal litigation sufficiently accounts for such non-compensable work.

### (2) Duplicative or Redundant Billing

PRA also argues that Plaintiffs' billing statements demonstrate that counsel billed for the same tasks multiple times by "burying those tasks in block billings for different

Plaintiffs." (Def.'s Mem. at 26–27.)   PRA identifies three examples from the *Wiley*, *Becker*, and *Yang* FDCPA billing statements.  First, it notes that three of Plaintiffs' federal billing statements "include an identical billing of 2.2 hours for just reading the same brief [PRA's Memorandum in Opposition to Plaintiffs' Motions for Partial Summary Judgment] on January 16, 2021", i.e., spending "6.8 hours reading twenty pages." (*Id*. at 28.)  Second, it states that in addition to billing 6.8 hours to read PRA's opposition brief, counsel billed an additional 41.5 hours to research and draft reply memoranda in *Wiley*, *Becker*, and *Yang*. (*Id*.) (citing billing entries in these cases on January 19–22, 25, 27–29, 2021).  Third, with respect to Plaintiffs' affirmative motions, PRA argues that Mr. Schwiebert filed the same or substantially similar Motions for Partial Summary Judgment in *Wiley*, *Becker*, and *Yang*, seeking a combined total of 20 hours[11] for that task. (*Id*. at 29.)

Plaintiffs dispute PRA's characterization of this work as identical and excessive. (Pls.' Reply [Doc. No. 84] at 10–11.)  As to the 2.2 hours spent reviewing each of PRA's memoranda in opposition to Plaintiffs' Motions for Partial Summary Judgment, Plaintiffs

---

[11]     PRA's combined calculation of 20 hours for this task appears to be incorrect. PRA calculates 10.5 hours in *Wiley,* 9.2 hours in *Becker*, and 11 hours in *Yang*, (Def.'s Opp'n at 29), which total 30.7 hours, not 20.  However, in calculating the total for this work, PRA also incorrectly calculates the total hours for *Yang* (and specifies the wrong dates with respect to both *Becker* and *Yang*).  PRA calculates 9.2 hours in *Becker*, with the work performed on December 13 and 14, 2020.  (*Id*.)  The *Becker* billing statement indeed shows a total of 9.2 hours, but the work was performed on December 13, 14, and 15, 2020. (Schwiebert Decl. [Doc. No. 94], Ex. H (*Becker* FDCPA Billing Stmt.) at 3.)   PRA calculates 11 hours in *Yang*, with the work performed on December 14, 15, and 18, 2020. (Def.'s Opp'n at 29.)  But the *Yang* billing statement shows 9.2 hours, not 11 hours, for work performed on December 13, 14, and 15, 2020. (Schwiebert Decl. [Doc. No. 94], Ex. J (*Yang* FDCPA Billing Stmt.) at 2.)  As corrected, it appears that these hours (10.5 + 9.2 + 9.2) total 28.9 hours.

argue that while similar, PRA's arguments in opposition contained unique defense content and theories, as well as individualized evidence. (*Id*. at 11.) For example, in *Becker*, PRA relied on Ms. Becker's deposition testimony to argue that the alleged debt was not subject to the FDCPA, which required counsel to review her testimony. (*Id*.) Mr. Schwiebert states that he actually spent more than 2.2 hours reviewing and analyzing each brief, but reduced the time to 2.2 hours per case. (Supp'l Schwiebert Decl. [Doc. No. 85] ¶ 1.)

With respect to the combined total of 41.5 hours for researching and drafting reply memoranda, Plaintiffs point out that PRA's opposition memoranda were 21 pages long and contained seven distinct arguments to which counsel was required to research and respond. (Pls.' Reply at 10–12.)

Regarding counsel's time spent drafting Plaintiffs' Motions for Partial Summary Judgment, Plaintiffs observe that while there were similarities in the legal standards and general FDCPA law, "each memorandum required unique exhibits and unique references to the applicable state court decisions finding the summons at issue defective." (*Id*. at 12) Furthermore, they note that assembling the necessary exhibits in support of each motion was a time-intensive undertaking. (*Id*.)

The Court finds that the work in question was not excessive, duplicative, or redundant. Nor do the time entries for such work reflect an effort to "bury" it in block-billed entries. As the Court has observed, these were fiercely contested cases, which increased the attorney's fees on both sides. With respect to work performed on common issues in *Wiley*, *Becker*, and *Yang*, throughout the billing records, Mr. Schwiebert divided his time by one-third in each of these cases. As just one example, a portion of the January

19, 2021 billing entries in *Wiley*, *Becker*, and *Yang* state, "1/3 of research and analysis of [an issue raised by PRA]." (*See* Schwiebert Decl., Ex. F (*Wiley* FDCPA Billing Stmt.) at 2); *id.*, Ex. H (*Becker* FDCPA Billing Smt.) at 3); *id.*, Ex. J (*Yang* FDCPA Billing Stmt.) at 2.) With respect to more recent common work, such as the work performed on the instant motions in September 2021, counsel divided his time by one-fourth in each of these cases. (*See, e.g.*, *Mayfield* (Schwiebert Decl. [Doc. No. 55], Ex. K (*Mayfield* FDCPA Billing Stmt.) at 3.) And while many of the legal issues overlapped, counsel was still required to tailor his work with respect to each client, and to maintain communication with each client.

The Court declines to reduce Plaintiffs' fee award based on PRA's argument that Mr. Schwiebert could have performed his work more expeditiously or in a more streamlined fashion. As the Court has observed, this litigation was hard-fought, which resulted in increased attorney's fees. Moreover, Plaintiffs voluntarily reduced their fee requests by eliminating certain hours and by counsel exercising billing judgment. No further reductions are warranted.

To summarize, the Court applies a 5% fee reduction to Plaintiffs' fee requests for work performed in the federal litigation to account for non-compensable administrative tasks. The 5% reduction results in the following fee awards: (1) $37,012 for Wiley ($38,960-$1,948); (2) $40,622 for Becker ($42,760-$2,138); (3) $29,716 for Yang ($31,280-$1,564); and (4) $29,326.50 for Mayfield ($30,870-$1,543.50).

### 4.    Costs

Under the FDCPA, a prevailing plaintiff is entitled to an award for the costs of the action. 15 U.S.C. § 1692k(a)(3). Plaintiffs request an award of costs as follows: (1)

$533.59 for Wiley; (2)  $811.63 for Becker[12]; (3) $525.87 for Yang; and (4) $0 for Mayfield.  Plaintiffs have submitted invoices and declarations in support of their requests. (Schwiebert Decl. [Doc. No. 69] ¶ 19, Ex. F (Wiley FDCPA Billing Stmt. & Costs) at 7; Schwiebert Decl. [Doc. No. 94] ¶ 19, Ex. H (Becker FDCPA Billing Stmt. & Costs) at 7); Schwiebert Decl. [Doc. No. 51] ¶ 19, Ex. J (Yang FDCPA Billing Stmt. & Costs) at 6.) The Court finds that Plaintiffs Wiley, Becker, and Yang are entitled to costs in the requested amounts.

## III.   CONCLUSION

Based on the submissions and the entire file and proceedings herein, **IT IS HEREBY ORDERED** that:

1. The Motion for Summary Judgment on Damages and Attorney's Fees and Costs filed by Plaintiff Sonji Washington Wiley, 20-cv-737 (SRN/DTS), [Doc. No. 65] is **GRANTED** as to Partial Summary Judgment on Damages and **GRANTED IN PART and DENIED IN PART** as to Attorneys' Fees and Costs.  Plaintiff Sonji Washington Wiley, 20-cv-737 (SRN/DTS), is hereby awarded the following: (1) $22,150 in actual damages; (2) $1,000 in statutory damages; and (3) $37,545.59 in reasonable attorney's fees and costs ($37,012 in fees + $533.59 in costs).

2. The Motion for Summary Judgment on Damages and Attorney's Fees and Costs filed by Plaintiff Melissa Becker, 20-cv-791 (SRN/DTS), [Doc. No. 90] is **GRANTED** as to Partial Summary Judgment on Damages and **GRANTED IN PART and DENIED IN PART** as to Attorneys' Fees and Costs.  Plaintiff Melissa Becker, 20-cv-791 (SRN/DTS), is hereby awarded the following:  (1) $43,320 in actual damages; (2) $1,000 in statutory damages; and (3) $41,433.63 in reasonable attorney's fees and costs ($40,622 in fees + $811.63 in costs).

---

[12]    Ms. Becker, who did not apply for the waiver of filing fees, submits documentation of costs for $411.63, and seeks reimbursement of the civil filing fee ($400), for a total of $811.63 in costs.  (*Becker*, Schwiebert Decl. [Doc. No. 94] ¶ 19, Ex. H (Becker FDCPA Billing Stmt. & Costs) at 7.)

3. The Motion for Summary Judgment on Damages and Attorney's Fees and Costs filed by Plaintiff Felicia Yang, 20-cv-1397 (SRN/DTS), [Doc. No. 47] is **GRANTED** as to Partial Summary Judgment on Damages and **GRANTED IN PART and DENIED IN PART** as to Attorneys' Fees and Costs.  Plaintiff Felicia Yang, 20-cv-1397 (SRN/DTS), is hereby awarded the following:  (1) $13,960  in actual damages; (2) $1,000 in statutory damages; and (3) $30,241.87 in reasonable attorney's fees and costs ($29,716 in fees + $525.87 in costs).

4. The Motion for Summary Judgment on Damages and Attorney's Fees and Costs filed by Plaintiff Dominique Mayfield, 21-cv-00001 (SRN/DTS), [Doc. No. 51] is **GRANTED** as to Partial Summary Judgment on Damages and **GRANTED IN PART and DENIED IN PART** as to Attorneys' Fees and Costs.  Plaintiff Dominique Mayfield, 21-cv-00001 (SRN/DTS), is hereby awarded the following:  (1) $1,000 in statutory damages; and (2) $29,326.50 in reasonable attorney's fees (no costs).


**LET JUDGMENT BE ENTERED ACCORDINGLY**.

Dated: March 28, 2022                                       s/Susan Richard Nelson
                                                            SUSAN RICHARD NELSON
                                                            United States District Judge